








THE CITY OF NEW YORK
LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

ZACHARY W. CARTER
*Corporation Counsel*

Ashley R. Garman
Senior Counsel
agarman@law nyc gov
Phone (212) 356-3539
Fax (212) 356- 3509

January 10, 2017

The witness shall testify under the protections proposed by plaintiff at p. 8 of this joint letter. 1-12-17
AKH

**BY ECF AND COURTESY COPY BY HAND-DELIVERY**
Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: Clemente Beckford, et al.. v. City of New York, et al., 16-cv-2261 (AKH)
16 Civ. 2261

Your Honor:

I am a Senior Counsel in the Office of Zachary W. Carter, Corporation Counsel of the City of New York, and the attorney assigned to represent defendants City of New York, Police Officer Wilbert Hernandez and Undercover Police Officer Shield # C0048 ("UC #C0048") in the above-referenced matter. In accordance with Local Civil Rule 37.2 and Your Honor's Individual Rules of Practice, the parties hereby submit this joint letter regarding an ongoing discovery dispute concerning the deposition of defendant UC #C0048, which is presently scheduled to take place on either January 19 or January 20, 2017.

1. Meet and Confer

Pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, counsel for plaintiffs and defendants have conferred in good faith regarding the disputed issues by telephone on December 12, 2016, as well as via electronic mail on December 12 and 14, 2016. The parties have been unable to come to a satisfactory resolution of these matters. The defendants now write to respectfully request a ruling concerning certain issues related to the deposition of the defendant undercover officer.

2. Background of this Action and of the Dispute

By way of background, plaintiffs Clemente Beckford, Benjamin Beckford and Ruth Beckford bring this action pursuant to 42 U.S.C. § 1983 alleging violations of their constitutional rights in connection with their arrests on August 10, 2015. Briefly stated, all three plaintiffs were arrested in the backyard of their home during a "buy and bust" operation carried

Case 1:16-cv-02261-AKH Document 25 Filed 01/13/17 Page 2 of 11

out by, among other officers, defendants Hernandez and UC #C0048. Clemente and Benjamin Beckford were alleged to have each sold a quantity of drugs to UC #C0048 during the operation, and it was alleged that, at the time of their arrests, Ruth Beckford pointed at UC #C0048, described the UC's physical appearance and stated, in sum and substance, "He's a cop, he's the guy."

Defendant UC #C0048 remains an active undercover officer with the NYPD's Detective Bureau. See Ex. A (Affidavit of Lt. Charles Richards ("Richards Aff.")), ¶ 9. In anticipation of the deposition of UC #C0048, which counsel for the parties have agreed will take place on either January 19 or January 20, 2017, the undersigned spoke by telephone with plaintiffs' counsel, Jessica Massimi, on December 12, 2016, regarding measures to be taken to protect the identity of the undercover officer during the officer's deposition. Although Ms. Massimi has agreed to certain protective measures,[1] Ms. Massimi will not agree to having the undercover officer testify at the deposition from behind a screen. Defendants appreciate plaintiffs' agreement to certain protections but remain concerned with the safety of the officer and the integrity of the officer's ongoing investigations. Accordingly, defendants respectfully seek a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure permitting UC #C0048 to testify at the deposition from behind a screen in order to not compromise the officer's identity, and requiring such additional protections as set forth herein and in the attached proposed Protective Order.[2] As set forth herein, defendants respectfully submit that the requested measures are justified by the law enforcement privilege.

Plaintiffs contend that if the Defendants' version of events is to be believed (i.e. that Clemente and Benjamin Beckford sold drugs to UC #C0048, and that Ruth Beckford pointed out the UC), then the Plaintiffs already know what UC #C0048 looks like, and Defendants' concerns are moot. Plaintiffs also note that Ruth Beckford had no obligation to refrain from pointing out the UC as alleged. Indeed, Plaintiffs allege that the Defendants, as complete strangers, walked into their backyard and began grabbing the Plaintiffs with no explanation, in front of family and friends. The Defendants' suggestion that Ruth Beckford – the victim of a serious civil rights violation – is obligated to (1) understand that UC0048 was attempting to operate undetected as a law enforcement agent, while publicly and obviously acting a law enforcement agent in Plainitffs' backyard in daylight, and (2) act complicit in her own false arrest by maintaining the confidentiality of the Defendant without any idea that he was undercover, is oppressive.

---

[1] Specifically, by email dated December 12th, Ms. Massimi advised that she would agree to hold the undercover officer's deposition at the Office of the Corporation Counsel, to have the entire deposition transcript marked Confidential, to not elicit any personal information about the undercover officer at the deposition and to not disclose any information about the officer's physical appearance or testimony to the plaintiffs or anyone else outside of plaintiffs' counsel's office.

[2] The proposed Protective Order is attached as Exhibit "B" hereto.

3. Defendants' Position

a. Standard of Review

A district court may issue a protective order "for good cause . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." F.R.C.P. 26(c)(1); In re City of New York, 607 F.3d 923, 949 (2d Cir. 2010).

b. The Law Enforcement Privilege

Defendants request that the Court issue a protective order permitting UC #C0048 to testify at his/her deposition from behind a screen and requiring the additional protections set forth in the proposed Protective Order annexed hereto.[5] Defendants respectfully submit that such protections are justified by the law enforcement privilege, and that having UC #C0048 appear to testify without these protections in place would place an undue burden on the undercover officer and the NYPD by seriously jeopardizing both the UC's safety and the integrity of ongoing and future police investigations. For these reasons, maintaining the confidentiality of the undercover officer's identity is vital.

*i. The Law Enforcement Privilege Applies to Protect the Identity and Likeness of the Active Undercover Officer*

The law enforcement privilege is intended to "prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise prevent interference with an investigation." In re Dept. of Investigation of the City of New York, 856 F.2d 481, 484 (2d Cir. 1988) (citation omitted). When assessing a claim of law enforcement privilege, a court must first determine if the

---

[5] Specifically, in addition to allowing for the use of a screen to protect the officer's identity and likeness at the deposition, defendants request that the Court issue an order (1) excluding plaintiffs from the UC's deposition and from the vicinity of defense counsel's offices at 100 Church Street, New York, New York, on the date of the deposition; (2) precluding plaintiffs' counsel and the court reporter from discussing the UC's physical description or any verbal or physical characteristics of the UC on the record, at the deposition or with anyone thereafter, including plaintiffs; (3) precluding plaintiffs' counsel and the court reporter from taking any videotape, photographs or in any way record the UC's voice or likeness; (4) precluding plaintiffs' counsel and the court reporter from participating in phone, text or email conversations during the UC's deposition; (5) precluding plaintiff's counsel and the court reporter from disclosing the identity of the UC to plaintiffs or any third party (including other individuals within plaintiffs' counsel's office), should such information be disclosed by defendants at the deposition or otherwise; and (6) requiring the court reporter recording the UC's deposition testimony to sign Exhibit "A" to the proposed Protective Order prior to commencement of the deposition. See Exhibit B (Proposed Protective Order).

privilege applies, and the party asserting the privilege must show that the subject of its application to the court is protected by the privilege. In re City of New York, 607 F.3d 923, 944, 948 (2d Cir. 2010) (internal citation omitted).

A party has met its burden to show that the law enforcement privilege applies where the confidential information sought could disclose the identity of an undercover officer. See In re City of New York, 607 F.3d at 944 (finding that the disclosure of documents "containing some information that *could* disclose the identity of an NYPD undercover officer" would undermine the safety of law enforcement personnel and "the ability of a law enforcement agency to conduct future investigations.") (emphasis added). This privilege applies when even "any individual 'thread' of an undercover operation may unravel the entire 'fabric' that could lead to identifying an undercover officer." Id. An investigation "need not be ongoing for the law enforcement privilege to apply as the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information is revealed to the public." Id.

Here, where plaintiffs' counsel is requesting that the UC appear for his/her deposition without the protection of a screen, the confidential information that will be exposed to all those attending the deposition (including plaintiffs' counsel and the court reporter) is the UC's identity and likeness. Such exposure could place the officer's life in jeopardy when out in the field, as well as compromise ongoing and future investigations. UC #C0048 is an active undercover detective assigned to the NYPD's Detective Bureau. See Ex. A (Richards Aff.), ¶ 9. Keeping his/her identity and likeness confidential is of paramount importance to this officer's safety. If the officer's identity is revealed, the officer's life could be in danger, and his/her undercover operations could be compromised. See id., ¶¶7-8, 10. Therefore, defendants contend the law enforcement privilege applies to UC #C0048 and his/her identity and likeness. See In re City of New York, 607 F.3d at 944 (Noting that reports contain some information that could disclose the identity of an NYPD undercover officer and stating "pulling any individual thread of an undercover operation may unravel the entire fabric that could lead to identifying an undercover officer. This could present a risk to the safety and effectiveness of that officer and would likely provide additional information about how the NYPD infiltrates organizations, thereby impeding future investigations").

In the instant case, plaintiffs Clemente and Benjamin Beckford were alleged to have facilitated the sale of narcotics in a neighborhood where UC #C0048 continues to actively participate in drug buys and other types of criminal investigations. Moreover, plaintiff Ruth Beckford is alleged to have attempted to expose the UC's identity following Clemente's and Benjamin's arrests, rendering the UC's safety concerns all the more real. Defendants respectfully submit that permitting the UC to testify at the deposition from behind a screen, together with the other protections set forth in the proposed Protective Order (including, inter alia, excluding plaintiffs from the deposition, prohibiting the video or audio recording of the deposition and prohibiting plaintiffs' counsel or the court reporter from disclosing to plaintiffs or any other third party any verbal or physical characteristics of the UC, or any information about the UC's identity that may be disclosed at the deposition) provides the greatest protection to the undercover officer to ensure the officer's safety and the integrity of his/her investigations.

ii. *Plaintiffs Cannot Overcome the Strong Presumption Against Maintaining the Confidentiality of the Undercover Officer's Identity and Likeness*

To overcome the strong presumption against disclosure, a party seeking disclosure of information protected by the law enforcement privilege must show (1) his suit is non-frivolous and brought in good faith; (2) that the information sought is not available through other discovery or from other sources; and (3) that the information sought is important to the party's case. In re City of City of New York, 607 F.3d at 945. "Demonstrating a compelling need does not automatically entitle a litigant to privileged information. Rather disclosure is required only if that compelling need outweighs the public interest in nondisclosure." Id.

Plaintiffs cannot rebut the strong presumption against not disclosing the identity and likeness of the undercover officer, because such disclosure is not important to plaintiffs' case. Defendants do not contest that UC #C0048 participated in the buy and bust operation that led to plaintiffs' arrests, and as defendants understand it, plaintiffs do not contend that there are any issues with respect to the officer's identity; they simply deny having sold drugs to *anyone* at the time of their arrests. Accordingly, the UC's likeness and image are of no consequence here, and plaintiffs can therefore not demonstrate a "compelling need" sufficient to overcome the above factors weighing in support of nondisclosure.

c. Conclusion

Based on the foregoing, and since plaintiffs will not agree to allow UC #C0048 to protect his/her identity and safety by testifying behind a screen– the key parameter that is designed to protect UC #C0048's identity and safety – defendants respectfully request that the Court issue an Order permitting UC #C0048 to testify behind a screen and requiring the additional protections set forth in the proposed Protective Order.

**4. Plaintiffs' Position**

In support of their motion for a protective order, the City largely relies upon In re City of New York, 607 F.3d 923 (2d Cir. 2010), where the Second Circuit examined whether the district court erred in granting Plaintiffs' request "to disclose, in discovery proceedings, 1800 pages of undercover Field Reports to over fifty attorneys representing a putative class of some 1200 individuals. In re City of New York, 607 F.3d at 933." Adams v. City of N.Y., 993 F. Supp. 2d 306, 314 (E.D.N.Y. 2014). Though the Defendants cite In re City, it is only instructive on the issue presented here because it highlights – by contrast – the grave threats and security concerns which are markedly absent from the instant case. In opposing Defendants' motion for a protective order, Plaintiffs rely on Adams v. City of N.Y., 993 F. Supp. 2d 306, 314 (E.D.N.Y. 2014), where the Court entirely rejected the Defendants' attempts to rely on In re City in the context of an undercover officer's testimony.

Plaintiffs respectfully request that the Court deny Defendants' motion in its entirety. The Defendants have not met their initial burden – necessary to overcome policy favoring open and transparent trials and their related proceeding – because their proferred concerns are not particularized and are purely speculative. See, generally, Adams v. City of N.Y., 993 F. Supp. 2d 306 (E.D.N.Y. 2014). Even if Defendants had met their initial burden, their motion should still be denied. This case turns on the deposition of Defendant UC0048, his credibility, and version of events. Plaintiffs and counsel are not seeking the identity of UC0048. Rather, counsel

alone (not Plaintiffs) is seeking to depose UC0048 face-to-face, but does not require personal information about him - *not even his real name*.

**a. Defendants' Nonparticularized Assertions of Risk Are Insufficient To Meet Their Burden**

The Defendants largely rely on In re City of New York, 607 F.3d 923 (2d Cir. 2010), for their argument. In In Re City, the Second Circuit examined whether the district court erred in granting Plaintiff's request "to disclose, in discovery proceedings, 1800 pages of undercover Field Reports to over fifty attorneys representing a putative class of some 1200 individuals. In re City of New York, 607 F.3d at 933." Adams v. City of N.Y., 993 F. Supp. 2d 306, 314 (E.D.N.Y. 2014). The confidential field reports were created by undercover officers who were investigating potential security threats in the months before the Republic National Convention. The Second Circuit noted that, in generating the reports "[t]he NYPD was mindful of the City's status as a prime target of international terrorism, and the NYPD was keenly aware that a large political event could attract anarchist violence and unlawful disobedience." In re City of New York, 607 F.3d 923, 929 (2d Cir. 2010). In In re City, the subject records were generated after the Deputy Commissioner of the NYPD's Intelligence Division began researching violent protests in other metropolitan areas and concluded "that even a small extremist element could trigger spiraling violence at large political demonstrations." Id. at 930. "Accordingly, Commissioner Cohen and the NYPD's Intelligence Division recognized that the NYPD needed a strategy to avoid disorder and violence during the RNC." Id.

The Defendants cannot seriously contend that security concerns of such grave magnitude are present in Beckford. First, this case does not present concerns of "international terrorism," "anarchist violence," or "unlawful disobedience." For the City to suggest otherwise is plainly dramatic. This case involves an alleged low level drug sale to UC #C0048. Indeed, Courts have ruled In re City inapplicable to situations such as this:

> Defendants speculate, based on the fact that the Undercover Officer was recently involved in undercover narcotics and firearms investigations, and that he is currently involved in daily buy and bust operations, that without the privilege the Undercover Officer's "confidentiality would be undermined, his investigations could be compromised, and his life could be endangered." (Def. Ltr. dated Aug. 16, 2013 2.) While maintaining the confidentiality of an Undercover Officer's identity is an important law enforcement and public interest, painting a picture of possible harms with a broad brush, without offering concrete details as to how testifying in a civil trial could lead to any of these risks, is insufficient to permit the Court to take the exceptional step of extending this privilege to shield a civil trial witness from testifying in an open courtroom. See Miller v. Mehltretter, 478 F. Supp. 2d 415, 425 (W.D.N.Y. 2007) (finding that testimony about the nature and dates of contacts between law enforcement agent and city officials was not subject to law enforcement privilege where party seeking the privilege could only provide "vague and conclusory statements without any specific or particularized facts" and did not "explain how disclosure will undermine law enforcement efforts and reveal law enforcement techniques," nor describe "how such

testimony would disclose investigative techniques and procedures the effectiveness of which would thereby be impaired" (internal quotation marks and citations omitted)).

Adams v. City of N.Y., 993 F. Supp. 2d 306, 313–14 (E.D.N.Y. 2014)

Unlike the Plaintiffs in In re City, here, the Plaintiffs are not seeking to access an unwieldy amount of sensitive records. Rather, counsel for the Plaintiffs seeks to take the deposition of the Defendant. The Court in Adams denied the Defendants' motion for a protective order because "[a]ssuming that a testifying witness's physical appearance could be characterized as the kind of information that may be subject to the privilege, Defendants cannot show that the Undercover Officer's appearance is 'information' that satisfies the factors articulated by the Second Circuit in In re City of New York." Adams v. City of N.Y., 993 F. Supp. 2d 306, 313 (E.D.N.Y. 2014). In ruling that "Defendants' reliance on In re City of New York to support their request for this extraordinary relief is misplaced," Adams v. City of N.Y., 993 F. Supp. 2d 306, 314 (E.D.N.Y. 2014), the Court in Adams went on to reason as follows:

> The holding of In re City of New York—that hundreds of pages of police field reports tied to a city-wide policing and investigatory strategy and containing the identities of multiple Undercover Officers are entitled to protection from pre-trial discovery—is not expansive enough to support Defendants' proposition that an individual Undercover Officer, whose name will remain unknown, is entitled to shield his appearance from plaintiff, the jury, and the public where the City has failed to show that requiring the undercover to appear and testify in open court in this proceeding "would likely undermine [his ability] to conduct future investigations.

Adams v. City of N.Y., 993 F. Supp. 2d 306, 314 (E.D.N.Y. 2014).

**b. Plaintiffs' Compelling Need for Their Counsel to Depose the Defendant Face-To-Face**

**i. Counsel's Need to Determine Whether the Defendant UC0048 Matches the Description Provided By Plaintiffs**

Plaintiffs in this case allege that they were arrested while lawfully present outside of their home. Plaintiff Ruth Beckford testified at her deposition in this case that the incident first arose when she was in the gated backyard of her home with her bothers, Plaintiffs Clemente and Benjamin Beckford, and several other neighbors and people, when plainclothes officers opened the gate to their backyard and entered without permission. Clemente and Benjamin Beckford were charged with a drug sale to an undercover, and Plaintiff Ruth Beckford was subsequently arrested for obstruction of governmental administration. The Defendants have not admitted whether UC0048 is one of the officers who entered the backyard and grabbed Clemente and Benjamin Beckford. Plaintiffs must be permitted the opportunity to investigate whether Clemente and Benjamin were arrested by UC0048 himself, or by another officer based on what UC0048 told him. Under the latter scenario, the manner in which UC0048 identified Benjamin and Clemente becomes an issue in the case.

**ii. Counsel's Need to Assess The Credibility of the Defendant**

The Defendants' contention that "Plaintiffs cannot rebut the strong presumption against not disclosing the identity and likeness of the undercover officer, because such disclosure is not important to plaintiffs' case," (Def. Ltr. At 3), is false and misleading. Plaintiffs and counsel are not seeking the identity of UC0048. Rather, counsel alone (not Plaintiffs) is seeking to depose UC0048 face-to-face, but does not require personal information about him.

Plaintiffs will be greatly prejudiced if their attorney is forced to sacrifice her ability to observe and interact with the Defendant, to the detriment of Plaintiffs' case. "These are valid concerns." Estate of Gerasimenko v. Cape Wind Trading Co., 272 F.R.D. 385, 389 (S.D.N.Y. 2011) (noting the importance of in-person depositions). Courts have concluded that the inability to observe a person's demeanor is an important consideration when determining whether a deposition should be permitted by means other than in-person. See, e.g., Sampathachar v. Fed. Kemper Life Assurance Co., No. Civ. A. 03–5905, 2004 WL 2743589, at *2 (E.D.Pa. Nov. 24, 2004) (denying a motion for remote deposition because the case was "likely to turn on the testimony by and credibility of" plaintiff); Anguile v. Gerhart, Civ. A. No. 93–934(HLS), 1993 WL 414665, at *3 (D.N.J. Oct. 7, 1993) (granting motion of plaintiff, a key witness, for initial telephonic deposition, provided that second deposition would be in person). Moreover, several issues in this case involve facts that are not in writing and will depend for their resolution upon the testimony of the Defendant UC0048. "In such a situation, the defendant is entitled to depose the plaintiff face-to-face in order to adequately prepare for trial." Clem v. Allied Van Lines Int'l Corp., 102 F.R.D. 938, 940 (S.D.N.Y. 1984).[6]

This case comes down to the credibility of the respective parties. Plaintiffs allege that Defendant UC0048 illegally entered their property, falsely arrested them, and fabricated criminal charges against them. For the Defendants to contend that counsel in a civil rights case need not view the demeanor of the opposing party, does not hold water. Attorneys for the New York City Law Department in civil rights cases routinely state that they need to depose Plaintiffs "to see how they present." For the same reasons that attorneys for the New York City Law Department need to depose Plaintiffs in person, counsel for the Plaintiffs must be afforded the same opportunity. I respectfully submit that the inability to observe at deposition UC0048's demeanor, willingness to make eye contact, evasive body language, physical appearance, etc., will greatly diminish my ability to advise my clients of their prospects at trial and will diminish my ability to determine which of the officers they interacted with.

**c. Considerations Which Warrant Open and Transparent Trials Also Warrant Open and Transparent Depositions**

Plaintiff notes that the Adams decision addressed whether the law enforcement privilege applied to protect an undercover officer's appearance at trial. While the issue raised here is

[6] Plaintiffs understand that the issues in these cases involved telephonic depositions. Plaintiffs cite these cases simply to provide case law for the argument that the need to assess a witness's credibility at deposition is a valid interest.

whether the law enforcement privilege applies to protect an undercover officer's appearance at deposition, Courts in the Southern District have ruled that the same considerations which warrant open and transparent trials also warrant open and transparent depositions. In Creighton v. City of N.Y., No. 12 CIV. 7454 (PGG), 2015 WL 8492754, at *11 (S.D.N.Y. Dec. 9, 2015), the Court rejected Defendants' argument that the law enforcement privilege applied to the identity of the confidential informant. In so doing, the Court reasoned as follows:

> It is worth noting that a contrary ruling would require this Court to preclude Plaintiff from attending the Informant's deposition or being present at trial when the Informant testifies. In the absence of evidence demonstrating a risk of harm, and in a case where (1) an informant's statements provide the sole basis for an assertion of probable cause; and (2) disclosure of the informant's identity is necessary to proper advocacy by plaintiffs [sic] counsel, such a result would be improper. Such an approach would also violate the "core First Amendment principle of open trials and transparency of the judiciary" and the accompanying "rich tradition of openness and transparency in the conduct of all judicial proceedings." Adams v. City of New York, 993 F. Supp. 2d 306, 317 (E.D.N.Y. 2014) (emphasis in original). Finally, the public interest in transparency weighs in favor of disclosing an informant's identity where, as here, "a lawsuit involves a matter of public concern such as civil rights ..." Goodloe, 2015 WL 5719663, at *14 (quoting Floyd v. City of New York, 739 F. Supp. 2d 376, 381 (S.D.N. Y. 2010)).

Creighton v. City of N.Y., No. 12 CIV. 7454 (PGG), 2015 WL 8492754, at *11 (S.D.N.Y. Dec. 9, 2015) (citations and quotation marks in original).

**d. Defendants Refuse to Compromise**

To be clear, though it is Plaintiffs' right to do so, they are in fact not insisting on an open and transparent deposition.[7] In an effort to compromise with the Defendants, counsel volunteered (without any fight) the following: (1) to hold the undercover officer's deposition at the Office of the Corporation Counsel, (2) to have the entire deposition transcript marked Confidential, (3) to not elicit any personal information about the undercover officer at the deposition, (4) the Plaintiffs will not attend the undercover's deposition, and counsel will not disclose any information about the officer's physical appearance or testimony to the Plaintiffs or anyone else outside of this office. The Defendants contend that this is not adequate. The Defendants' insistence on the measures set forth in footnote 3 of their letter assume that this office and Plaintiffs are sources of danger to the undercover officer, "an assumption that Defendants do not support with any evidence." Adams v. City of N.Y., 993 F. Supp. 2d 306, 316 (E.D.N.Y. 2014). The City has absolutely no basis for suggesting that I will not comply with the confidentiality measures I have suggested. In fact, I deposed an undercover detective in Ronald Gadsden v. The City of New York, et al., 14-cv-06687-RJD-RER, where the witness did not wear a disguise or appear behind a screen, and there were no security breaches. In the 181 civil

[7] Plaintiffs respectfully reserve their right to insist on being present in the courtroom during UC0048's trial testimony.

rights cases I have litigated in the United States District Courts for the Southern and Eastern Districts of New York, there is not one individual from The New York City Law Department who can point to an instance where I have not complied with confidentiality agreements related to witnesses (and documents).

For the reasons set forth in Plaintiffs' portion of this letter, Plaintiffs respectfully request that the Court deny Defendants'' request in its entirety.

The parties thank the Court for its consideration herein.

Respectfully submitted,

/s/

Ashley R. Garman, Esq.
*Senior Counsel*
Special Federal Litigation Division
*Attorney for Defendants*
Jessica Massimi, Esq.
*Attorneys for Plaintiffs*

Judge wrote:

"The undercover shall testify under the protections proposed by plaintiff at p. 9 of this joint letter.

1-12-17
Alvin K. Hellerstein"